# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

        v.

CHARLES T. PETERS,

        Appellant.

No. 79348-9-I

ORDER DENYING MOTION
FOR RECONSINSIDERATION,
WITHDRAWING OPINION, AND
SUBSTITUTING OPINION

Charles Peters has filed a motion for reconsideration of the opinion filed on February 22, 2021. The State of Washington has filed a response. The court has determined that the motion for reconsideration shall be denied, the opinion shall be withdrawn, and a substitute opinion shall be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on February 22, 2021, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____
Dwyer, J.

_____   _____
Coburn, J.               Mann, C.J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | DIVISION ONE |
| --- | --- |
| Respondent, | No. 79348-9-I |
| v. | PUBLISHED OPINION |
| CHARLES T. PETERS, | |
| Appellant. | |

DWYER, J. — Charles Peters appeals from his nine convictions of promoting prostitution in the second degree. He raises numerous claims of error, asserting that (1) the charging document was constitutionally inadequate, (2) insufficient evidence supported his conviction, (3) the prosecution violated his rights under the First Amendment to the United States Constitution, (4) the promoting prostitution statute is unconstitutionally vague as applied to him, and (5) prosecutorial misconduct denied him a fair trial. Because none of Peters' contentions are meritorious, we affirm.

I

Charles Peters began purchasing sexual activity regularly in 2010 or 2011. Peters identified himself as a "hobbyist"—a sex buyer who sought an emotional experience as well as a sexual experience. Peters sought out female sex

workers who provided "the girlfriend experience," a short-term simulation of a romantic relationship. He was primarily interested in Korean sex workers. Peters was a frequent sex buyer—he engaged sex workers once or twice a week while trying to "limit" his spending on these episodes to $2,400 per month.

Peters located information concerning which sex workers were available for hire and which services they offered on a review website called "The Review Board." Because he wanted to "give something back," Peters also wrote and posted reviews about his own experiences with various sex workers. Peters' reviews included detailed and graphic narratives describing his encounters with the particular sex worker he was reviewing, as well as booking information and an Internet hyperlink to that sex worker's online advertisement.

Peters was also a founding member of another, smaller group of enthusiasts called "The League of Extraordinary Gentlemen." This group focused its collective attention specifically on Korean sex workers in the greater Seattle area. The League began as an e-mail chain but eventually grew into a private discussion board website. Peters served as a moderator to the online discussion board and was able to invite new members into the group. The members of the League also held occasional, informal, in-person meetings, which were often organized by Peters.

Peters regularly helped to connect various actors within the sex trade to one another. Peters introduced independent sex workers who wanted to work with agencies or bookers to pertinent agency representatives or bookers. He recommended specific sex workers and explained the screening process to

would-be customers. He made appointments for other customers and "vouched" for new customers to help them pass through screening processes.

Peters was also one of several creators of an advertising website for Korean sex workers in the greater Seattle area, KGirlDelights.com. Peters paid the website hosting fee for KGirlDelights.com and also purchased the .net and .org versions of the same domain name. Agency owners and independent sex workers sent Peters advertisements, which he posted on the website.

In the spring of 2015, the King County Sheriff's Office and the Bellevue Police Department began a joint investigation into the Internet sex trade in the greater Seattle-Bellevue area. Detective Luke Hillman, working undercover as "LucasK1973," created an account on The Review Board and noticed that Peters, under the name "Peter Rabbit,"[1] was a frequent poster and appeared to be "kind of a leader." Eventually, Peters invited Detective Hillman to join the League of Extraordinary Gentlemen. This proved unwise.

Peters was ultimately charged with nine counts of promoting prostitution in the second degree. Prior to trial, Peters moved the court to dismiss the charges as unconstitutionally vague and brought in violation of his First Amendment rights. The trial court denied the motion. A jury convicted Peters on all counts. He now appeals.

II

Peters contends that the fourth amended information charging him with promoting prostitution, on which he was tried, was constitutionally deficient

---

[1] Peters also went by "TomCat007" and "ManTraveling4@gmail.com."

because it did not adequately set forth the essential elements of the crime. But the language Peters avers was necessary is language that explains what an element means, not language that states what an element is. Thus, it is definitional. Because a charging document need not include definitions of essential elements, his contention fails.

Peters was charged with nine counts of promoting prostitution in the second degree. Each count alleged that Peters knowingly advanced prostitution, but did not include the statutory definition of the term "advances prostitution" as set forth in RCW 9A.88.060.[2]

---

[2] The counts were charged as follows:

Count 1 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance prostitution through the website "K-girl Delights" (aka "KCD") and the prostitution of one or more unidentified individuals associated with "K-girl Delights";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 2 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between January 7, 2013, and January 6, 2016, did knowingly advance the prostitution enterprise "Asian GFE" (aka "Korean GFE", "Superstar GFE", "Asian Superstar", "Korean Superstar") and the prostitution of one or more unidentified individuals associated with "Asian GFE";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 3 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance the prostitution enterprise "Special Dreamwa" and the prostitution of one or more unidentified individuals associated with "Special Dreamwa";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 4 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance the prostitution enterprise "Golden Blossom" and the prostitution of one or more unidentified individuals associated with "Golden Blossom";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

4

An accused has a right under both the state and federal constitutions to be informed of each criminal charge alleged so that the accused may adequately prepare a defense for trial. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22 (amend. 10). The State must provide a charging document that sets forth every material element of each charge made, along with essential supporting facts. State v. McCarty, 140 Wn.2d 420, 425, 998 P.2d 296 (2000).

---

Count 5 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance the prostitution enterprise "Fantasy K" (aka "K Studio") and the prostitution of one or more unidentified individuals associated with "Fantasy K";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 6 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between January 25, 2013, and January 6, 2016, did knowingly advance the prostitution enterprise "Asian Fantasy" (aka "Sultry K") and the prostitution of one or more unidentified individuals associated with "Asian Fantasy";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 7 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between January 25, 2013, and January 6, 2016, did knowingly advance the prostitution enterprise "Asian Haven" (aka "Asian Candy" and "House of Asia") and the prostitution of one or more unidentified individuals associated with "Asian Haven";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 8 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance the prostitution of an unidentified individual known as "Serena";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

Count 9 Promoting Prostitution In The Second Degree
That the defendant Charles T. Peters in King County, Washington, between August 14, 2014, and January 6, 2016, did knowingly advance the prostitution of an unidentified individual known as "Luna";
Contrary to RCW 9A.88.080(1)(b), and against the peace and dignity of the State of Washington.

"The standard of review for evaluating the sufficiency of a charging document is determined by the time at which the motion challenging its sufficiency is made." State v. Taylor, 140 Wn.2d 229, 237, 996 P.2d 571 (2000). When a defendant challenges the sufficiency of the charging document prior to a verdict, the charging language is strictly construed. Taylor, 140 Wn.2d at 237. If, however, the defendant challenges the sufficiency of the charging document following a verdict, then the charging language must be construed liberally in favor of validity. Taylor, 140 Wn.2d at 237.

Because a challenge to the sufficiency of a charging document involves a question of constitutional due process (notice), it may be raised for the first time on appeal. State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). When an appellant raises such a challenge, the proper standard of review is the two-pronged test set forth in Kjorsvik: "(1) do the necessary elements appear in any form, or by fair construction can they be found, in the information, and if so, (2) can the defendant show he or she was actually prejudiced by the inartful language." McCarty, 140 Wn.2d at 425 (citing Kjorsvik, 117 Wn.2d at 105-06).

The first prong of this test is satisfied when a charging document sets forth all of the essential elements of the crime charged. McCarty, 140 Wn.2d at 425. If the required elements are set forth, even if only in vague terms, then the charging document also satisfies the second prong of the test if the terms used did not result in any actual prejudice to the defendant. McCarty, 140 Wn.2d at 425.

However, if the required elements cannot be found, or even fairly implied, in the charging document, we do not reach the second prong of the test. Instead, when the charging document fails to meet the requisites of the first prong of the test, prejudice to the defendant is presumed and we must declare the charging document constitutionally deficient. McCarty, 140 Wn.2d at 425. The remedy for a constitutionally deficient charging document is reversal and dismissal of the charge without prejudice to the State's ability to refile the charge. State v. Quismundo, 164 Wn.2d 499, 504, 192 P.3d 342 (2008).

Here, Peters asserts that the information charging him with promoting prostitution in the second degree omitted essential elements of the crime set forth in RCW 9A.88.060. The State responds by asserting that RCW 9A.88.060 merely furnishes a definition of an element of the crime of "promoting prostitution in the second degree" as set forth in RCW 9A.88.080(1)(b), and that such definitional terms need not be alleged.

Because Peters raises his challenge for the first time on appeal, we apply the standard of review announced in Kjorsvik. Hence, to properly resolve the claim of error, we must first identify the essential elements of the crime of promoting prostitution in the second degree.

RCW 9A.88.080(1)(b) provides that "[a] person is guilty of promoting prostitution in the second degree if he or she knowingly . . . [a]dvances prostitution."[3]

"Advances prostitution" is defined by RCW 9A.88.060(1):

---

[3] The alternative means of promoting prostitution occurs if a person knowingly "[p]rofits from prostitution." RCW 9A.88.080(1)(a).

7

A person "advances prostitution" if, acting other than as a prostitute or as a customer thereof, he or she causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.

Peters asserts that (1) "aiding"[4] and (2) while not acting as a customer are essential elements because they must be proved in order to obtain a conviction. Furthermore, he avers, the State was required to inform Peters that he was being charged with "knowingly not acting as a customer." In other words, Peters claims that the State was required to allege that Peters knew that he was not acting as a customer.

However, definitions of essential elements—which define and limit the scope of essential elements—are not additional essential elements that must be alleged in the charging document. State v. Porter, 186 Wn.2d 85, 91, 375 P.3d 664 (2016); State v. Johnson, 180 Wn.2d 295, 302, 325 P.3d 135 (2014); State v. Rattana Keo Phuong, 174 Wn. App. 494, 545, 299 P.3d 37 (2013). Definitions are not transformed into essential elements even if they must ultimately be proved at trial to obtain a conviction. See, e.g., State v. Allen, 176 Wn.2d 611, 626-30, 294 P.3d 679 (2013) (plurality opinion) (information charging felony harassment was

---

[4] Peters' briefing uses "aiding" to refer to "causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution."

8

adequate without articulation that only true threats may be charged, although proof of true threat constitutionally required for conviction).

"Aiding" and "acting other than as a . . . customer" merely define and limit the scope of the essential element, "advances prostitution." Accordingly, "aiding" and "acting other than as a . . .customer" are not essential elements of promoting prostitution in the second degree and therefore, the charging document was not required to include them.

Peters avers that State v. Pry, 194 Wn.2d 745, 452 P.3d 536 (2019), which held that essential elements set out in RCW 9A.76.050 must be included in a document charging rendering criminal assistance, compels a different outcome. However, the Pry court relied on its prior determination that the contents of the statutory provision at issue were essential elements. Pry, 194 Wn.2d at 755 ("Fortunately, we have already opined on this issue. In State v. Budik, we reviewed the sufficiency of the evidence supporting a conviction for rendering criminal assistance. 173 Wn.2d 727, 736-37, 272 P.3d 816 (2012)."). There is no comparable case indicating that "aiding" and "acting other than as a . . .customer" are essential elements of promoting prostitution in the second degree. We hold that "aiding" and "acting other than as a . . .customer" are not essential elements of promoting prostitution in the second degree but, rather, define the element of "advances prostitution." Thus, the charging document included all of the essential elements of promoting prostitution

9

in the second degree and, accordingly, adequately informed Peters of the charges against him.[5]

III

Next, Peters contends that a constitutionally insufficient quantum of evidence was adduced at trial to support his convictions for promoting prostitution in the second degree. This is so, he claims, because the State failed to prove that Peters was not acting as a customer. Because a rational trier of fact could have found that Peters' actions were beyond those of a customer, sufficient evidence supports Peters' convictions.

The due process clauses of the federal and state constitutions require that the government prove every element of a crime beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (citing U.S. CONST. amend. XIV, § 1); State v. Johnson, 188 Wn.2d 742, 750, 399 P.3d 507 (2017) (citing WASH. CONST. art. I, § 3). After a verdict, the relevant question when reviewing a challenge to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll

---

[5] Peters' derivative assertion that the State was required to allege that he knew that he was not acting as a customer necessarily fails as a result of this analysis.

reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201.

As we have previously determined, the essential elements of promoting prostitution in the second degree, by the means charged in this case, are set forth in RCW 9A.88.080(1)(b):

> A person is guilty of promoting prostitution in the second degree if he or she knowingly . . . [a]dvances prostitution.

> "Advances prostitution" is defined by statute:

> A person "advances prostitution" if, acting other than as a prostitute or as a customer thereof, he or she causes or aids a person to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.

RCW 9A.88.060(1).

Thus, to prove that Peters was guilty of promoting prostitution, the State was required to establish that Peters knowingly advanced prostitution, meaning that he engaged in some conduct designed to institute, aid, or facilitate an act or enterprise of prostitution, other than his conduct as a customer.

Peters claims that the proffered evidence shows only that he acted as a customer. However, the fact that Peters was a customer does not immunize his noncustomer conduct. Indeed, several decades ago we rejected a contention similar to that advanced by Peters.

> The statute was drafted so that one acting as a prostitute would not, by virtue of that activity alone, be guilty of advancing prostitution. A reasonable construction consistent with the legislative intent is that one acting as a prostitute can also be guilty

11

of advancing prostitution based on evidence of activities other than her own act of prostitution

State v. Kees, 48 Wn. App. 76, 79, 737 P.2d 1038 (1987). That which applies to the prostitute also applies to the customer.

At trial, evidence was presented that Peters referred sex buyers to specific sex workers and agencies, scheduled appointments for sex buyers, vouched for would-be customers, and gave them detailed instructions about how to get through screening processes. Peters also advised enterprise owners with regard to specific apartment complexes to use and connected individual sex workers with bookers and agencies. In addition, Peters created and ran a website on which agencies and individual sex workers could post advertisements.

From this evidence, a reasonable finder of fact could determine that Peters knowingly advanced prostitution, regardless of his personal sex-purchasing behaviors. These acts could be determined by a rational finder of fact to advance prostitution even if Peters had never personally purchased sexual activity, and they are not immunized under the law merely because he was also a customer.

Accordingly, sufficient evidence supports the jury's determinations that Peters advanced prostitution.

IV

Peters next contends that his prosecution violated the First Amendment by punishing him for protected speech. He is wrong.

The First Amendment prevents the government from restricting speech based on its content. Ashcroft v. Am. Civil Liberties Union, 535 U.S. 564, 573,

122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002). However, this limitation is not absolute. Am. Civil Liberties Union, 535 U.S. at 573-74. Speech that is intended to "incit[e] or produc[e] imminent lawless action and is likely to incite or produce such action" is not protected by the First Amendment. Brandenburg v. Ohio, 395 U.S. 444, 447, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969). Our Supreme Court has determined that "the only kind of speech punished" by the prohibition of advancing prostitution, as defined by RCW 9A.88.060, is "[s]peech directed toward the persuasion of another to enter into an illegal arrangement." State v. Cann, 92 Wn.2d 193, 195-96, 595 P.2d 912 (1979). Because such speech is intended to incite imminent lawless action (i.e., engaging in prostitution) and is likely to do so, it is not protected by the First Amendment. See Brandenburg, 395 U.S. at 447.

Peters asserts that his case is factually distinguishable from Cann because the speech for which he was prosecuted was not an offer to enter into an illegal arrangement but, rather, "the fact that he wrote detailed positive reviews describing his experiences with prostitutes, and referred others to sex workers upon his recommendation." In support, Peters cites to Hess v. Indiana, 414 U.S. 105, 94 S. Ct. 326, 38 L. Ed. 2d 303 (1973). In Hess, the Supreme Court determined that a remark by an antiwar protestor could not be punished as disorderly conduct because, as the protestor's words were not directed to anyone in particular, there was no evidence that the protestor's words were intended and likely to produce "imminent disorder." Hess, 414 U.S. at 108-09. That holding does not aid Peters. Here, by contrast to Hess, Peters' speech—detailed

13

reviews meant to serve as advertisements and referrals to specific sex workers—was intended to and was likely to produce imminent violation of prostitution laws.

Because Peters' speech was both intended to produce and likely to produce unlawful activity, prosecution based on this speech does not violate the First Amendment.[6]

V

Peters next postulates that RCW 9A.88.060 and RCW 9A.88.080, which, respectively, define "advances prostitution" and prohibit promoting prostitution in the second degree are unconstitutionally vague as applied to him. This is so, he argues, because ordinary people would not understand that his conduct was prohibited. We disagree.

"The due process clause of the Fourteenth Amendment requires that citizens be afforded fair warning of proscribed conduct." City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990) (citing Rose v. Locke, 423

---

[6] In a motion for reconsideration brought after we initially filed this opinion, Peters cited a blog post authored by UCLA Law Professor Eugene Volokh. Given that a blog post is neither subject to peer review nor to any other review processes akin to those applicable to scholarly work published in a law review or journal, it strikes us that Professor Volokh's blog post is entitled to similar weight as would have been assigned to a letter to the editor submitted by a learned individual in days gone by. Nevertheless, Peters is certainly entitled to cite to it.

In his blog post, Professor Volokh avers that the unlawful activity that Peters encouraged was not sufficiently imminent to fall within this First Amendment exception. Eugene Volokh, Conviction for Praising Prostitutes (as "Promoting Prostitution") Upheld, REASON: VOLOKH CONSPIRACY (Feb. 24, 2021, 8:01 AM), https://reason.com/volokh/2021/02/24/conviction-for-praising-prostitutes-as-promoting-prostitution-upheld/ [https://perma.cc/FX5M-E2Y].

The State responds that the actions that Peters encouraged were sufficiently time-limited to constitute imminent unlawful action. This accords with our view.

We note, however, that Professor Volokh also opines that Peters' speech likely falls into a separate First Amendment exception—speech that constitutes solicitation of a crime. Volokh, supra; see United States v. Williams, 553 U.S. 285, 298-99, 128 S. Ct. 1830, L. Ed. 2d 650 (2008). This argument was not presented to us by the parties, but we agree that it also supports our decision. Therefore, we need not address the matter further to be comfortable that a correct decision was reached. We are, accordingly, convinced that Peters does not establish an entitlement to relief in his motion for reconsideration, which we deny.

U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975)).  A defendant challenging a statute as being unconstitutionally vague must show that the statute either (1) does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement.  Douglass, 115 Wn.2d at 178.  Due process does not require impossible standards of linguistic certainty because "[s]ome degree of vagueness is inherent in the use of our language."  State v. Smith, 130 Wn. App. 721, 726, 123 P.3d 896 (2005).  A statute is presumed to be constitutional, and the party challenging its validity must prove that it is unconstitutional beyond a reasonable doubt.  Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 739, 818 P.2d 1062 (1991).

A statute can be challenged as being facially vague or vague as applied.  Smith, 130 Wn. App. at 727.  To evaluate a challenge to a statute as being vague as applied, we look at the actual conduct of the party challenging the statute, not to any hypothetical situation at the periphery of the rule's scope.  Smith, 130 Wn. App. at 727.

Peters asserts that an ordinary person would not understand that posting online reviews of sex workers and making referrals to sex workers would be prohibited because it falls within customer activity.  Not so.  An ordinary person would understand "advanc[ing] prostitution," as defined by RCW 9A.88.060, to include all activities that promote prostitution other than the acts of buying or selling sexual activity.  See Kees, 48 Wn. App. at 79 ("It is obvious that the

15

legislative intent in enacting the criminal statute prohibiting the promotion of prostitution is to punish those who assist others to commit prostitution."). Accordingly, an ordinary person would understand that the conduct here at issue—writing detailed reviews including booking information, recommending specific sex workers to customers, making appointments for other customers, advising new customers with regard to agency screening processes, introducing sex workers to agencies, and creating advertising and review platforms—was prohibited.

Peters also contends that the statutory scheme fails to establish standards to ensure that enforcement will be applied in a nonarbitrary manner. His claim in this regard is premised on his assertion that it fails to "provide an ascertainable standard for determining whether given conduct is innocent, or criminal."

Our Supreme Court addressed a similar challenge[7] to the same statute and explained:

> The statute must be given a reasonable construction to avoid absurd consequences. It is plain that the legislature meant this clause to apply only to conduct which is designed and intended to advance prostitution. Furthermore, a statute is not rendered unconstitutional by reason of the fact that its application may be uncertain in exceptional cases, as long as the general area of conduct against which it is directed is made plain.

Cann, 92 Wn.2d at 195.

Accordingly, because only conduct that is designed and intended to advance prostitution is prohibited, sufficient standards to determine whether

---

[7] The appellant argued that "advances prostitution" could be construed to "forbid innocent conduct which might incidentally advance prostitution. A neighbor gratuitously shoveling snow from the sidewalks of a house of prostitution, or a taxicab driver taking a prostitute to meet a client are cited as examples." Cann, 92 Wn.2d at 195.

given conduct is innocent or criminal exist. RCW 9A.88.060 and RCW 9A.88.080 are not unconstitutionally vague as applied to Peters.

VI

Finally, Peters contends that the State committed misconduct in its closing argument by misstating the law, requiring reversal. We disagree. Although the prosecutor misstated the law during his rebuttal, Peters fails to demonstrate a substantial likelihood that the misstatement impacted the jury's verdict.

Prosecuting attorneys are quasi-judicial officers who have a duty to ensure that defendants receive a fair trial. State v. Boehning, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). Prosecutorial misconduct violates this duty and can constitute reversible error. Boehning, 127 Wn. App. at 518.

For a conviction to be reversed, the defendant must establish both that (1) the State committed misconduct by making inappropriate remarks and (2) those remarks had a prejudicial effect. State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). A prosecuting attorney commits misconduct by misstating the law. Allen, 182 Wn.2d at 373. When the defendant objected at trial, if we determine that the prosecutor's statement was improper, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict in order to obtain appellate relief. State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

Here, the prosecutor made the following statement in his closing argument:

> This instruction gives you folks further guidance. "If a person has information that would lead a reasonable person in the same

17

situation to believe that a fact exists, the jury is permitted, but not required, to find that he or she acted with knowledge of that fact." And this is a reasonable person, not a reasonable hobbyist, what would a reasonable person think? Would they think that if they are advertising, soliciting, encouraging, directing, finding customers, helping agencies, would a reasonable person think they are, indeed, promoting prostitution? Of course. It's not rocket science.

The defense attorney also addressed the issue in her closing argument and explained that, while the jury could consider what a reasonable person would know, to find Peters guilty the jury must find that Peters himself knew that he was promoting prostitution. The State objected and, after a sidebar discussion, the trial court overruled the objection. Upon the request of defense counsel, the trial court informed the jury that the objection had been overruled. The defense attorney continued:

Thank you. As I was saying, under the knowing, you can consider what a reasonable person would do. But at the end of the day, you're ultimately going to have to decide unanimously, beyond a reasonable doubt, that Charlie himself knew he was not acting as a customer. It's subjective. It's a subjective standard.

During rebuttal, the prosecutor returned to the subject:

The question in this case is—and let me talk to you a little bit more about this idea that he didn't know what he was doing. There is a legal disclaimer on the website. When Mr. Emmanuel sends him money, he says, "Burn it." The standard is whether a reasonable person doing this stuff would know that they're promoting, and the answer is yes, this is common sense.

Defense counsel objected to this as a misstatement of the law, and the trial court overruled the objection.

The prosecutor's reference to "the standard" is somewhat unclear. To the extent that it indicates that the jurors could convict Peters, even if they did not believe that he subjectively knew that he was promoting prostitution, because a

18

reasonable person would have known that fact, it misstated the law.  See State v. Shipp, 93 Wn.2d 510, 514-15, 610 P.2d 1322 (1980).  In determining Peters' mental state, the jury was allowed to consider what a reasonable person would know under the circumstances but not to the exclusion of determining what the defendant's actual subjective state of mind was proved to be.

Here, however, the prosecutor had already accurately explained the law to the jury, the defense attorney had accurately explained the law to the jury with the explicit approval of the trial court, and the jury instructions accurately stated the law.  In this context, there is no substantial likelihood that the misstatement affected the jury's verdict.

As Peters does not show that there is a substantial likelihood that the prosecuting attorney's reference to "the standard" affected the jury's verdict, he fails to establish reversible error.

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____          _____
Coburn, J.                                       Mann, C.J.

19